IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS FRIEL, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-04-923 |
| | : | |
| JOSEPH SMITH, | : | (Judge Jones) |
| | : | |
| Respondent | : | |

## ORDER

June 2, 2005

**Background**

Dennis Friel ("Petitioner" or "Friel") filed this *pro se* Petition for Writ of Habeas Corpus ("the Petition") pursuant to 28 U.S.C § 2241 while confined at the Federal Prison Camp, in Lewisburg, Pennsylvania ("FPC-Lewisburg"). Named as Respondent is FPC-Lewisburg Warden Joseph Smith. Service of the petition was previously ordered.

Friel states that on June 23, 2003, a federal court determined that he had violated the terms of his supervised release. As a result, he was sentenced to an eighteen (18) month term of incarceration. Petitioner began service of his parole violation term on July 18, 2003. He was transferred to FPC-Lewisburg on September 24, 2003. Friel's present Petition claims entitlement to federal habeas corpus relief on the grounds that the Federal Bureau of Prisons ("BOP") acted improperly by: (1) refusing to allow him

a six (6) month placement in a Community Corrections Center ("CCC")[1] and (2) denying his request for transfer to a federal correctional facility which is closer to his place of residence.[2]  As relief, Petitioner seeks a transfer to a federal prison camp located in Fort Devens, Massachusetts and reconsideration of his request for CCC placement in accordance with pre-December 2002 BOP policy.

Respondent seeks dismissal of the Petition on the grounds that: (1) Friel failed to exhaust his available administrative remedies; (2) the denial of Petitioner's request for CCC placement was due to his chronic medical conditions and not the BOP's December, 2002 policy change; and (3) the prisoner does not enjoy either a constitutional or statutory right to a six month confinement in CCC.

**Discussion**

As previously noted, Petitioner's claims are twofold.  First, Friel claims that he has been improperly denied a transfer to a federal prison camp which is closer to his place of residence.  Second, his Petition contends that the BOP has improperly denied his request to spend the last six months of his incarceration in a CCC.  Friel argues in the Petition that this decision was based on a BOP policy change which took place in

---

[1] Petitioner maintains that the decision regarding his CCC placement was improper because it was based solely upon a recent unlawful BOP policy change regarding CCC eligibility.

[2] By denying him a transfer, Petitioner asserts that correctional officials are violating his constitutionally protected right to receive visitors.

December 2002. Respondent's initial argument is that Friel has failed to exhaust his available administrative remedies with respect to both of his present claims. In his reply, Friel does not address the non-exhaustion argument.

A federal prisoner seeking mandatory relief from federal prison authorities must exhaust administrative remedies before bringing his or her claim to federal court. Veteto v. Miller, 794 F.2d 98, 100 (3d Cir. 1986); Waddell v. Aldredge, 480 F.2d 1078, 1079-80 (3d Cir. 1973). "A federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted his available administrative remedies." Bradshaw v. Carlson, 682 F. 2d 1050, 1052 (3d Cir. 1981). The doctrine of exhaustion of administrative remedies is well established and a person is not entitled to judicial relief until the prescribed remedy has been exhausted. McKart v. United States, 395 U.S. 185, 192 (1969); Arias v. U.S. Parole Comm., 648 F.2d 196, 199 (3d Cir. 1981)(holding that administrative remedies must be exhausted before seeking relief in federal court); U.S. ex rel. D'Agostino v. Keohane, 877 F.2d 1167, 1173-74 (3d Cir. 1989).

The BOP has established a multi-tier Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment.[3] See 28 C.F.R.

---

3. Matters excluded from this program are set forth at 28 C.F.R. § 542.12, which states as follows:

> (a) An inmate may not use this Program to submit a Request or Appeal on behalf of another inmate. This program is intended to address concerns that are personal to the inmate making the Request or Appeal, but shall not

§§ 542.10-542.19 (1998).  "This program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to Community Corrections Centers (CCCs) under Bureau of Prisons' responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities."  Id. at § 542.10.

The program provides that, with certain exceptions,  "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy."[4] Id. at § 542.13(a).  Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 "calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a).  If a valid reason for delay is given, an extension of the filing time may be granted.  Id. at 542.14(b).  The Warden has 20 calendar days from the date the

---

prevent an inmate from obtaining assistance in preparing a Request or
Appeal, as provided in § 542.16 of this part.         (b) Requests
or Appeals will not be accepted under the Administrative Remedy Program
for claims for which other administrative procedures have been established,
including tort claims, Inmate Accident Compensation claims, and Freedom
of Information or Privacy Act requests.  Staff shall inform the inmate in
writing of the appropriate procedure if the Request or Appeal is not
acceptable under the Administrative Remedy Program.

4 . CCC inmates are not required to seek informal resolution.  Id. at § 542.13(b).  Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals.  Id.  Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution."  Id.

4

Request or Appeal is filed in which to respond.  Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response.  Id. at § 542.15.  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response.  Id.  "When the inmate demonstrates a valid reason for delay, these time limits may be extended."  Id.  The Regional Director has 30 calendar days to respond and the General Counsel has 40 calendar days in which to respond.  Id. at § 542.18.

The response time provided for at each level may be extended in writing "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level."  Id.  Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  Id.

With respect to his CCC related claim, it is undisputed that the BOP changed its policies regarding CCC placement in December 2002.  It has been previously recognized that a federal prisoner such as Friel is entitled to have the BOP consider his eligibility for CCC placement in accordance under the BOP's pre-December 2002 policies.  See Fagiolo v.Smith, Civil No. 3:04-148, slip op. at 8-9  (M.D. Pa. March

13, 2004)(Conaboy, J.).

In the present case, Respondent argues that Petitioner was denied recommendation for CCC placement solely due to due to the BOP's finding that Friel's medical condition excluded him from participation in the CCC program. Thus, since the determination that Petitioner was ineligible for CCC placement was not the result of the December 2002 policy changes, he is not entitled to be excused from the exhaustion requirement.

Based on this Court's review of the undisputed record, it is apparent that Petitioner was denied admission into the CCC program due to his medical condition, specifically, his obesity and chronic hip and back problems. Hence, this Court agrees with Respondent's contention that Friel cannot escape satisfaction of the administrative exhaustion requirement under a theory that to pursue such remedies would be futile based on the principles announced in <u>Fagiolo</u>.

The undisputed record clearly shows that Respondent has satisfied his burden of establishing that Friel's present claims relating to the failure of FCP-Lewisburg officials to grant him a transfer and a sixty (60) day CCC placement were not administratively exhausted. Since Friel has not adequately demonstrated any proper basis as to why he should be excused from the exhaustion requirement, dismissal of

the Petition is appropriate.[5]

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

    1.    The Petition for Writ of Habeas Corpus is DISMISSED for failure to exhaust available administrative remedies.

    2.    The Clerk of Court is directed to CLOSE the case.

    3.    Based on the Court's decision herein, there is no basis for the issuance of a certificate of appealability.

                                          <u>s/ John E. Jones III</u>
                                          John E. Jones III
                                          United States District Judge

---

[5] It is additionally noted that a federal inmate is not entitled to CCC placement for any set period of time. See Serafini v. Dodrill, Civil No. 3:CV-04-311, slip op. at 3 (M.D. Pa. Feb. 23, 2004)(Vanaskie, C.J.).